STOKER, Judge.
The primary and underlying determination made by the trial court in this litigation (and to be considered on appeal) is the ownership of two items of movable property, a crawler loader and a truck-tractor. Plaintiff, Gordon Bradford, was the owner of these movables prior to the time that negotiations for sale took place between the parties. The judgment appealed from declares that plaintiff is the owner of both movables and that no sale of them by Bradford to defendant, Michael Eaves, ever took place. Issues other than ownership have been involved at various points in the history of this litigation, but as we see it, ownership is the question before us on appeal. We affirm.
FACTS
Unfortunately, this matter cannot be resolved without a fairly extensive recitation of facts. The trial court did not render formal reasons for judgment, but it has indicated its holding and reasons therefor in oral reasons given from the bench at the end of the trial, in the formal judgment, in an order denying defendant a new trial and in an amended formal judgment.
The plaintiff Bradford was the owner of a 1981 Model 165, International Harvester, Crawler Loader, Serial # B4200 2B000 893, and a 1961 Ford F700 Truck/Tractor, Serial # T70NU160356. These two movables present separate histories and will be described separately.
With reference to the crawler loader, the negotiations took place between the plaintiff and the defendant sometime in February, 1983. Plaintiff alleges that he offered to sell the crawler loader to the defendant for the price of $34,000, that Michael Eaves was to pay $14,000 cash at the time of sale and the remaining balance was to be paid in ninety days. Plaintiffs initial petition made this allegation and the further allegation that the sale was never consummated and that Michael Eaves has never paid any sums to plaintiff. Through his initial petition plaintiff sought a writ of sequestration which was granted. We need not recite the subsequent history concerning a bond for release of the equipment and the events which followed thereafter. The crawler loader was in fact seized under the sequestration along with the truck-tractor.
The defendant filed an answer to the petition and a reconventional demand in which he asserts that the price for the crawler loader was $20,000 and that plaintiff was fully paid this amount, and therefore plaintiff was not entitled to a sequestration. In the prayer to the answer and reconventional demand the defendant asked that he be declared the owner of the crawler loader and that the court order the release thereof to defendant.
With reference to the facts which were shown on trial concerning the crawler loader, the only witnesses were the plaintiff and defendant and Mr. Robert A. Leavines, a loan officer with the Rapides Bank & Trust Company in Alexandria, Louisiana. According to the testimony of the plaintiff Bradford and Mr. Leavines, the plaintiff contacted Mr. Leavines on behalf of defendant concerning a loan to the defendant Eaves for $20,000. Bradford indicated to Mr. Leavines that he would be willing to purchase a money market certificate or certificate of deposit in the amount of $15,000 which he would pledge to secure the loan. The next day or shortly thereafter, plaintiff and defendant did see Mr. Leavines and a loan of $20,000 was made. The note in question was signed by both plaintiff and defendant as co-makers. The back of the note bears the notation that the note is secured by a chattel mortgage granted by Michael Eaves. It further indicates that the note is secured by the pledge of a certain money market certificate described *1331 in the amount of $15,000 in the name of Gordon Bradford or Kathy Tyler.
Mr. Leavines testified that as the transaction was explained to him by the plaintiff prior to the meeting at the bank, the sale price was to be $34,000 of which the defendant was to pay $14,000 in cash which he had, but that $20,000 would be necessary for the balance of the purchase price. Mr. Leavines further explained that the bank would not have loaned the full amount of the purchase price. Furthermore, it is quite evident that the bank was not willing to make the loan at all without the chattel mortgage and the pledge of the $15,000 money market certificate. Mr. Leavines testified, or at least inferred, that the essence of the terms of the sale were repeated at the bank in the presence of the defendant. The essence being that the full sale price was $34,000, that the defendant had or would have $14,000 to pay to the plaintiff, and that the $20,000 in loan proceeds would be paid over to the plaintiff. The excess over the $15,000 put into the money market certificate, $5,000, was deposited to an account in the name of plaintiff. Mr. Leavines also required that the crawler loader be insured in the full amount of $34,000. After the bank transaction, both plaintiff and defendant went to an insurance company, Alexandria Underwriters, where a policy in the amount of $34,000 was obtained. Initially, Michael Eaves was listed as the owner on the policy. Later it was amended to show both Gordon Bradford and Michael Eaves as named insureds.
There is no dispute between the parties as to the fact that the defendant never did pay $14,000 over and above the $20,000 which came from the bank transaction. Defendant maintains stoutly that the price itself was $20,000, and that as a result of the bank transaction plaintiff was fully paid for the crawler loader. The position taken by the defendant is that if the plaintiff thought he was owed $14,000 over and above the $20,000 because the price was $34,000, his remedy was not to have the property seized, but to sue for the balance of the purchase price.
When the $20,000 note became due, Eaves failed to pay the note. The plaintiff was called upon and did pay the note. He paid it through means of obtaining an additional loan secured by a note from the Rapides Bank which hé was required to secure by pledging the $15,000 money market certificate. At that point the Rapides Bank & Trust Company endorsed over to plaintiff the original $20,000 note signed by plaintiff and defendant as co-makers so that plaintiff became the owner of the note.
The net result of these events is that plaintiff in reality has never derived anything from the defendant or the loan transaction. The $20,000 which was loaned by the bank on the original note was made solely on the strength of plaintiffs signature plus the security given in the form of the chattel mortgage and the pledge of the money market certificate. Admittedly, the defendant has never paid the $14,000 in question.
After the bank transaction, the crawler loader remained in the possession of the plaintiff and no delivery was made to the defendant. However, it appears that the defendant came and got the crawler loader himself. It was in defendant’s possession when the seizure provoked by the plaintiffs petition was filed.
At this point, we shift in this narrative to the facts concerning the alleged sale of the Ford truck-tractor. The facts relative to this item are considerably simpler. It appears that sometime after the crawler loader transaction, plaintiff and defendant entered into an agreement under which the defendant agreed to purchase and plaintiff agreed to sell the truck for $1,000. The defendant took possession of the truck without making any payment at that time. Defendant testified that the agreement relative to when payment was to be made was that he should pay for it “whenever I could — whenever I was able to pay him.” Title was never transferred to defendant.
PERTINENT PLEADINGS IN THE CASE
Plaintiffs principal demand in his original petition was that he be recognized as *1332 the owner of the two movables and that he be given the possession of them. The prayer contains a demand for the sequestration upon the giving of bond. In the alternative, plaintiff prayed that he be given judgment for $35,000 with interest and costs. In the further alternative, plaintiff invoked a vendor’s lien and privilege for the amount of $35,000 and asked for recognition thereof and the usual relief connected with enforcement of such a lien.
In the defendant’s answer and reconven-tional demand he asked that he be recognized and declared to be the owner of the crawler loader. In the body of the answer defendant alleged or admitted that he was indeed indebted to the plaintiff in the amount of $1,000 for the Ford truck-tractor but further alleged that plaintiff had not and was not able to furnish title to this vehicle. Defendant admitted that he had never paid the $1,000 owed on the truck-tractor. His prayer makes no mention of the truck-tractor. As plaintiff in reconvention, defendant asked that he be awarded damages in the amount of $500 a day from the date of the seizure of the crawler loader until it is restored to his possession. In the body of his reconvention defendant alleges that because he has been deprived of the use of the crawler loader that he has suffered a financial detriment and loss.
As noted above, there were certain proceedings concerning lifting the release but that they are not pertinent to the case at this stage.
In an answer to the reconventional demand, plaintiff alleges that he was entitled to attorney’s fees in the amount of $1,500 necessitated in opposing an unlawful release of the loader sought by the defendant. (It appears that the matter of the release and the release bond were disposed of by stipulation.)
Prior to trial the defendant filed an amending answer in which he pleaded that the obligation sued upon had been extinguished because he had obtained a discharge in bankruptcy in the United States District Court.
The final pleading filed was an amending petition by the plaintiff in which he amended paragraph 11 of his original petition to allege that no sums had ever been paid to plaintiff and that the sale of the “Tractor Loader” be dissolved and that it be returned to petitioner. There appears to be some ambiguity because paragraph 11 of the original petition appears to have reference to both the truck-tractor and the crawler loader, but the amendment, in referring to the “Tractor-Loader,” refers to neither.
ACTION OF THE TRIAL COURT
In oral reasons handed down from the bench at the conclusion of the trial, the trial judge expressed himself as being of the opinion that the parties had made an agreement with reference to the crawler loader for a sale price of $34,000 of which $14,000 was to be paid down and $20,000 was to be financed. The trial judge stated that he found that the parties did the financing at the bank for the $20,000 to cover the payment of that portion of the purchase price but that the $14,000 was never paid.
On the basis of these facts, the trial judge held that the transaction was a conditional sale, the condition being that the $14,000 should be paid and it was never paid. Under these circumstances, the trial court held that no sale ever took place with reference to the crawler loader. With reference to the truck-tractor, the trial court found that there was no sale at all because the terms of payment were not fixed and because title to the property was never transferred to the defendant. Under the circumstances, the trial court held that the truck-tractor should be returned to the plaintiff.
Thereafter a formal judgment was presented to the trial court which it signed. The judgment, dated December 7, 1983, declared Gordon Bradford, the plaintiff, to be the owner of the crawler loader and the Ford truck-tractor. It declared that the February, 1983 sale of the crawler loader was a conditional sale, conditioned on the payment of the purchase price which was never paid. The trial court further de- *1333 dared in the judgment that no valid sale of the crawler loader was ever consummated and no ownership was at any time vested in the defendant. It held that no sale of the Ford truck-tractor ever took place because no date was fixed for the payment of the purchase price.
The defendant applied for a new trial which was denied by the trial court. On December 21, 1983, the trial court signed an amended judgment (rendered on December 14, 1983) in which it “ORDERED, ADJUDGED AND DECREED that no sale took place between Gordon Bradford and Michael Eaves as there was never any agreement as to the price of the loader.”
ARGUMENT
In their briefs before this Court the parties have argued numerous points. With reference to the crawler loader, the defendant insists that the price agreed upon was $20,000 and that the sale was perfect upon agreement for the object and the price thereof. Defendant makes extensive argument challenging the trial court’s holding that a conditional sale had taken place. Beyond urging that the trial judge’s action with reference to the Ford truck-tractor was in error through mentioning it in an assignment of error, the defendant does not discuss the issues relative to this particular movable.
CONCLUSIONS
In his original petition the plaintiff asked for two types of relief. He first asked for declaratory relief through a demand that plaintiff be recognized as entitled to the ownership and possession of the crawler load and that the Ford truck-tractor should be restored to him. The second form of relief asked for was for the sequestration. Plaintiff made an alternative demand for $35,000 in the event that a sale was found to have taken place and for further relief. However, there was no demand on plaintiff’s part for a money judgment other than the $1,500 sought for attorney’s expenses necessary in connection with the release of the sequestration. The judgment makes no money award in favor of the plaintiff other than casting the defendant for costs of the suit. Plaintiff has not appealed from the judgment.
With reference to the crawler loader, we conclude that the trial judge’s ultimate decision was not based upon there having been a conditional sale, but rather on the fact that there was no agreement on the price of the crawler loader. For this reason we withhold comment on the validity of conditional sales as such under our law. It is basic in our law that a sale takes place between parties as soon as there is an agreement between them for the object and for the price thereof even if no delivery has been made nor the price paid. C.C. art. 2456. In its oral reasons given at the- end of the trial the trial court concluded the sale had taken place for $34,000. It is our opinion that the amendment of the judgment signed by the court after the original judgment indicates that the trial court changed the basis for its ruling and concluded that the parties simply failed to agree on a price.
Considering the testimony of the bank loan officer, it is quite possible that the trial court might have made a credibility evaluation and concluded that the sale of $34,000 had been agreed upon. However, it is equally plausible that the parties never did agree upon a price. The plaintiff insists that the price agreed upon was $34,-000, and the defendant maintains just as stoutly that the total price agreed upon was $20,000. Since we conclude that the trial judge ultimately concluded that no sale price had been agreed upon, we must consider the correctness of this ruling. Under the circumstances, we do not conclude that the trial judge was clearly wrong and with respect to the crawler loader and his declaratory judgment should be affirmed.
With respect to the Ford truck-tractor, the situation is not quite as clear. Plaintiff’s version of the matter is that when the agreement was made the defendant agreed to make payment as soon as he finished a job he was working on which would haye taken a couple of weeks. Defendant takes the position that there was *1334 no agreement at all as to when he should be paid. In any event, the plaintiff was never paid. Moreover, title was never transferred to the defendant. There was at least a failure of consideration which would entitle the plaintiff to a dissolution of the sale. However, in view of the fact that the title never passed, we have no difficulty in concluding that on one basis or another the plaintiff is entitled to the ownership and possession of the truck-tractor.
In view of the foregoing findings by this Court and our affirmance of the trial court, we do not see that there is anything in the judgment to which defendant’s defense of discharge in bankruptcy could be applied.
The trial court made no ruling on plaintiff’s reconventional demand for damages. Under the circumstances, we take it that they were rejected. FinanceAmerica v. Thibodeaux, 419 So.2d 543 (La.App. 3rd Cir.1982); Wilson v. Avis Rent-A-Car, 400 So.2d 1184 (La.App. 1st Cir.1981); Succession of Kelly v. Schauff 323 So.2d 243 (La.App. 1st Cir.1975) and Blanchard v. Arkansas Louisiana Gas Co., 51 So.2d 850 (La.App. 2d Cir.1951). Rejection of the re-conventional demand was proper.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the defendant and plaintiff-in-reconvention, Michael Eaves.
AFFIRMED.